IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TRUDY POWELL, AS ADMINISTRATRIX OF THE ESTATE OF HAROLD EUGENE POWELL, ] ] ] ] ] | |
| Plaintiff, ] ] | |
| v. ] ] | 1:20-cv-1764-ACA |
| JEFFERSON DUNN, et al., ] ] | |
| Defendants. ] | |

## MEMORANDUM OPINION AND ORDER

While imprisoned at Limestone Correctional Facility ("LCF"), Harold Powell began to experience symptoms of cancer. Despite his deteriorating condition and repeated requests for medical help, LCF provided almost no medical treatment for six months. By the time LCF transferred Mr. Powell to Crestwood Medical Facility, his cancer had reached its final stages. Mr. Powell died two months later. (Doc. 18 at 11–12 ¶¶ 50–53).

Plaintiff Trudy Powell is Mr. Powell's mother and the representative of his estate. (*Id*. at 2). In that capacity, she filed this complaint against Defendants Jefferson Dunn, Grant Culliver, Ruth Naglich, Dewayne Estes, Scarlett Robinson, Jeff Williams, Steve Watson, M. Haynes, Prem Gulati, Correctional Officer

Sturdivant, and Wexford Health Sources, Inc. ("Wexford"). Ms. Powell makes claims against these Defendants pursuant to 42 U.S.C. § 1983 asserting violations of Mr. Powell's rights under the Eighth and Fourteenth Amendment for failure to protect, deliberate indifference to a serious medical need, failure to intervene, and state-created danger. She also asserts state law claims for civil conspiracy and indemnification.

Ms. Powell never served Defendants Gulati, Haynes, and Sturdivant, and on August 31, 2021, the court dismissed those defendants from the case. (Doc. 31). Wexford filed an answer to the amended complaint. (Doc. 28). The remaining defendants move to dismiss all claims against them. (Doc. 20).

The court **GRANTS** the motion to dismiss.

First, the court finds that Ms. Powell's claims in Counts One, Three, Four, Five, Six, Eight, and Nine are barred by the statute of limitations and therefore **DISMISSES** those claims **WITHOUT PREJUDICE**.

Second, the court declines to exercise supplemental jurisdiction over Ms. Powell's state law claims in Counts Eleven and Twelve and therefore **DISMISSES** those claims **WITHOUT PREJUDICE**.

I. <u>BACKGROUND</u>

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Mr. Powell entered LCF as an inmate in January 2018. (Doc. 18 at 9 ¶ 34). Approximately six weeks later, Mr. Powell began to experience minor ailments, including muscle and body aches and cold/flu-like symptoms. (*Id.* at 10 ¶ 36). Mr. Powell initially treated his symptoms with cold and acid reflux medications that were available to inmates at LCF. (*Id.* at 2 ¶ 4).

At some point, Mr. Powell alerted unidentified officers about his condition and submitted medical requests to be seen by LCF's contracted health services provider. (*Id.* at 10 ¶ 37). Around March or April 2018, "it became apparent that Mr. Powell's body was weakening, a rash had developed, his ability to walk was declining, and he was experiencing severe constipation." (*Id.* at 2 ¶ 5). Mr. Powell requested medical attention and was seen by a nurse. (Doc. 18 at 2 ¶ 6). Thereafter, Mr. Powell continued to request medical care and was seen by Wexford on June 26, 2018.[1] (*Id.* at 10 ¶ 38).

The precise timeline and details of events that took place thereafter is relatively unclear. Wexford initially referred Mr. Powell to ADOC's Mental Health Services for his complaints of back pain. (*Id.* at 11 ¶ 43). Mental Health Services

---

[1] Wexford was responsible for, and provided medical and health care to, ADOC inmates pursuant to a contract with ADOC. (Doc. 18 at 6 ¶ 20).

noted that Mr. Powell's issue was his back, not his mental health, and recommended examination by a medical doctor. (*Id*. at 11 ¶ 44). Mr. Powell was seen by someone at the prison on August 12, 2018 and at that time, his ability to walk had deteriorated to the point where a wheelchair was necessary. (Doc. 18 at 2–3, 10 ¶¶ 6, 40). At the August 12 visit, a nurse informed Mr. Powell that he would see a medical provider in two days, but that visit never happened. (*Id*.). Twelve days later, a doctor ordered an MRI be performed on Mr. Powell. (*Id*. at 10–11 ¶¶ 41, 42). The MRI was never provided. (*Id*. at 11 ¶ 42).

In addition to Mr. Powell's own complaints while at LCF, Mr. Powell's family members and cellmates communicated Mr. Powell's need for medical care to LCF officials. (*Id*. at 10–11, 34 ¶¶ 39, 42, 171). Mr. Powell's family members also called LCF seeking information about what, if anything, prison officials were doing about his illness. (Doc. 18 at 10, 34 ¶¶ 39, 171). On August 3, 2018, Ms. Powell contacted LCF and was told—despite the fact that no diagnostic testing had been performed—that her son was fine and "ha[d] no cancer and no hepatitis." (*Id*. at 10 ¶¶ 39, 42).

During the period from March or April to August, Mr. Powell suffered additional symptoms such as bruising, bleeding, fatigue, confusion, infections, dizziness, and dehydration. (*Id*. at 13 ¶ 60). After providing little to no treatment to Mr. Powell, LCF finally transported him to Crestwood Medical Center on September 6, 2018. (*Id*. at 11 ¶ 46).

4

At Crestwood, doctors immediately placed Mr. Powell on a ventilator. (*Id.*). A week later, he was diagnosed with cancer and started chemotherapy treatment but by this time, Mr. Powell's cancer was well into its final stages. (*Id.* at 11–12 ¶ 50). Mr. Powell died on November 7, 2018; his cause of death was identified as multiple myeloma with complications to his cardiovascular, pulmonary, gastrointestinal, genitourinary, reticuloendothelial, and central nervous systems. (Doc. 18 at 11–12 ¶¶ 50, 52, 53).

The moving Defendants each served as prison officials for ADOC at the time of the events giving rise to this lawsuit. (*Id.* at 4–8 ¶¶ 16–19, 23–25). Defendant Dunn was the Commissioner of the Alabama Department of Corrections and was responsible for "exercising the authority, functions, and duties of the ADOC." (*Id.* at 4 ¶ 16). Defendant Culliver was Associate Commissioner for Operations and Institutional Security for ADOC the first seven weeks Mr. Powell was within ADOC's custody. (*Id.* at 4–5 ¶ 17). During that time, Culliver was "responsible for overseeing institutional security, staffing, the Classification Review Board, the Training Division, and the Transfer Division at each of ADOC's correctional facilities." (*Id.*). Defendant Naglich was the Associate Commissioner of Health Services for ADOC and "responsible for the administration of medical and mental health services to those within [ADOC's custody]." (*Id.* at 5 ¶ 18). Defendant Estes served as LCF's Warden and was responsible for the "day-to-day operations of the

prison, the safety and security of all prisoners at the facility, and the supervision of all subordinate[s] . . . within the facility." (Doc. 18 at 5 ¶ 19). Defendant Robinson was the Deputy Warden of LCF and Defendant Williams served as the Chaplin. (*Id.* at 6–7 ¶¶ 23, 24). Finally, Defendant Watson worked as the Associate Commissioner of Plans and Programs for ADOC whose job it was to "ensur[e] that inmates ha[d] the opportunity to practice their recognized religion." (*Id.* at 7 ¶ 25).

The amended complaint alleges that Defendants Dunn, Culliver, Naglich, and Estes failed to protect Mr. Powell from harm as a result of their policy and custom of understaffing and overcrowding at LCF. (*Id.* at 23–25 ¶¶ 101–112). Ms. Powell also alleges that Defendants Dunn, Culliver, Naglich, Williams, and Watson were deliberately indifferent to Mr. Powell's medical needs as evidenced by their knowledge of a "lack of medical care, delays in medical care, [and] failures to provide adequate medical care" at LCF (*id.* at 27 ¶ 127), and that Defendants Estes and Robinson were also deliberately indifferent to Mr. Powell's medical needs by failing to "adequately supervise, discipline, implement and/or train LCF medical staff and/or correctional officers, or take any other reasonable measures to facilitate their officers providing or obtaining timely medical care to or for prisoners like Mr. Powell." (Doc. 18 at 30 ¶143). And, Ms. Powell asserts claims of state-created danger and failure to intervene against all Defendants. (*Id.* at 32–33 ¶¶ 154–164 (failure to intervene against Dunn, Culliver, Naglich, Williams, and Watson); *id.* at

33–35 ¶¶ 165–176 (failure to intervene against Estes and Robinson); *id.* at 37–38 ¶¶ 189–196 (state-created danger against Dunn, Culliver, Naglich, Williams, and Watson); *id.* at 38–39 ¶¶ 197–204 (state-created danger against Estes and Robinson)). Finally, Ms. Powell asserts a state law claim for civil conspiracy against Dunn, Culliver, Naglich, Williams, and Watson. (Doc. 18 at 40–41 ¶¶ 213–216).

## II.  DISCUSSION

Defendants Dunn, Culliver, Naglich, Estes, Robinson, Williams, and Watson move to dismiss Ms. Powell's amended complaint, contending, among other things, that the statute of limitations bars Ms. Powell's federal claims. (Doc. 20 at 16–17). Defendants also argue for the first time in their reply that Ms. Powell lacks standing to bring claims seeking injunctive relief. (Doc. 27 at 3–4). "[T]he court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). Therefore, the court will begin its analysis with whether Ms. Powell has standing to assert her claims seeking injunctive relief before turning to the issue of whether her claims are time-barred.

1. Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

7

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quotation marks omitted). "[T]o demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood they will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).

Ms. Powell lacks standing to seek an injunction from prohibiting the defendants from "engaging in further violations of the Eighth Amendment." (*Id.* at 42 ¶ 225). Because Mr. Powell died, Ms. Powell cannot establish that Mr. Powell faces a substantial likelihood of having his Eighth Amendment rights violated by the defendants in the future. *See Lyons*, 461 U.S. at 105–06. Further, Ms. Powell lacks prudential third party standing to bring her claims on behalf of other prisoners in ADOC facilities. *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1042 (11th Cir. 2008) (explaining that, to establish third party standing, "the litigant must have a close relation to the third party").

Accordingly, the court **DISMISSES** Ms. Powell's claims for injunctive relief for lack of standing **WITHOUT PREJUDICE**.

2. <u>Statute of Limitations</u>

Ms. Powell brings each of her seven claims against Dunn, Culliver, Naglich, Estes, Robinson, Williams, and Watson in both their official and individual capacities. (Doc. 18 at 4–8 ¶¶ 16–19, 23–25). The Defendants contend that Ms. Powell's federal claims are barred by the applicable statute of limitations and therefore due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 20 at 16–17). "A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977).[2] But dismissal on statute of limitations grounds is appropriate only when it is "apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Applying that standard here, the amended complaint is due to be dismissed. For actions brought pursuant to 42 U.S.C. § 1983, state law provides the applicable statute of limitations and determines when the limitations period is tolled. *Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994). Under Alabama law, claims brought pursuant to 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992); Ala. Code § 6-2-38(1). Federal law governs when a § 1983 action accrues, thus triggering the beginning of the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

limitations period. *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Under § 1983, actions do not accrue until the plaintiff knows or has reason to know that he has been injured. *Id*.

Ms. Powell filed her initial complaint on November 6, 2020. She maintains that she had until November 7, 2020 to bring her claims based on the false assumption that her claims did not accrue until November 7, 2018, the day that Mr. Powell died. (Doc. 22 at 22). In support of her theory, Ms. Powell contends that she brought this lawsuit pursuant to Alabama Code § 6-5-410, the Alabama Wrongful Death statute. (*Id*.). Claims brought pursuant to § 6-5-410 must be commenced within two years from the date of death. Ala. Code § 6-5-410(d); *see also Wood v. Wayman*, 47 So. 3d 1212, 1217–18 (Ala. 2010) (stating that § 6-5-410 is a "statute of creation," and that "the two-year period is not a statute of limitations but a period after which liability under the statute ceases to exist").

This argument does not save Ms. Powell's claims. First, Ms. Powell did not assert her claims through Alabama's wrongful death statute, which is an independent state law cause of action. *See* Ala. Code § 6-5-410. In fact, Ms. Powell did not assert a claim for wrongful death at all. Instead, Ms. Powell's complaint brings federal constitutional claims pursuant to § 1983. Federal law governs when those claims accrue. *Mullinax*, 817 F.2d at 716.

Although it is unclear exactly when Mr. Powell first received medical attention, it is apparent from the face of the complaint that Mr. Powell was diagnosed with cancer "well into [its] final stages" and began chemotherapy on September 14, 2018. (Doc. 18 at 11 ¶ 49, 50). Thus, any claim relating to inadequate medical treatment necessarily accrued at the very latest on that date, by which point Mr. Powell knew or should have known that he suffered an injury that forms the basis of Ms. Powell's complaint and he could identify who inflicted that injury. Accordingly, Ms. Powell had until September 14, 2018, at the very latest, to bring her claim alleging deliberate indifference to a serious medical need.

Similarly, Ms. Powell's claims against Defendants Dunn, Culliver, Naglich, Estes, Robinson, Williams, and Watson for failure to protect, failure to intervene, and state-created danger relate to the medical treatment that Mr. Powell received while at LCF. (*See* doc. 18 at 23–25, 32–35, 37–39 ¶¶ 101–112, 154–176, 189–204). While it is unclear on what exact date those claims accrued, they could not have accrued later than the date on which Mr. Powell left LCF, which was September 6, 2018. (Doc. 18 at 11 ¶ 46). Accordingly, Ms. Powell had until September 6, 2018, at the latest, to file her claims alleging failure to protect, failure to intervene, and state-created danger on behalf of Mr. Powell.

Because Ms. Powell's claims are untimely, the court **DISMISSES** her claims in Counts One, Three, Four, Five, Six, Eight, and Nine **WITHOUT PREJUDICE**.

3. <u>State Claims</u>

In addition to her federal law claims, Ms. Powell asserts two state law claims: a claim for civil conspiracy against Defendants Dunn, Culliver, Naglich, Williams, and Watson; and a claim for indemnification against the State of Alabama. (Doc. 18 at 40–41 ¶¶ 213–19). A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The court has dismissed all claims against Defendants Dunn, Culliver, Naglich, Estes, Robinson, Williams, and Watson over which it has original jurisdiction. Therefore, the court declines to exercise supplemental jurisdiction over Ms. Powell's state law claims. Accordingly, the court **DISMISSES** Counts Eleven and Twelve **WITHOUT PREJUDICE**.

### III.   CONCLUSION

For the reasons given above, the court **GRANTS** Defendants' motion to dismiss Ms. Powell's amended complaint.

**DONE** and **ORDERED** this March 1, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE